CHILDERS *v.* DUVALL.

Opinion delivered June 1, 1901.

COUNTY CLERK—INCREASE OF POPULATION—MODE OF ASCERTAINMENT.— Under Const. 1874, art. 7, § 19, providing that "in any county having a population exceeding 15,000 inhabitants, as shown by the last federal census, there shall be elected a county clerk," etc., and amendment 4 to said constitution, providing that the governor shall fill all vacancies in office by appointment, which shall be in force until the next general election; *held,* that until the director of the census has, by bulletin or otherwise, published the result of a census, no official notice can be taken of the census for the purpose of electing or appointing a county clerk, but after the result has been published the governor is authorized to appoint a county clerk in a county whose population since the previous census has increased sufficiently to entitle it to a county clerk.

Appeal from Lawrence Circuit Court.

FREDERICK D. FULKERSON, Judge.

*G. G. Dent,* for appellant.

Article 7, section 19, of the constitution does not apply to conditions coming into existence after its adoption. If future in its operation, it at least was not self-executing, and required legislative action to authorize its application. Under the census act of 1899, there could be no "official announcement" of the census of 1900 until the publication of the regular report in 1902. The "last federal census" referred to in art. 7, § 9, of the constitution of 1874 applied to the census of 1870; and the provision is to be construed in the light of the census laws then in force. 87 Pa. St. 350. The circuit clerk was not *de facto* county clerk, even if the provision of the constitution be treated as self-executing. 118 U. S. 441. But the constitutional provision was not self-executing,

and the previous law continued in force until proper legislative action was taken. 24 La. An. 214; 23 La. An. 402; 7 Kans. 189; 93 Va. 15; 67 Mo. 265; 34 La. An. 735; 24 Am. Rep. 214; 32 Am. Rep. 1200; 33 Am. Rep. 873; 34 *id.* 337; 15 Pet. 449; 10 Fed. 503. *Cf.* 48 Ark. 89.

*Chas. Coffin,* for appellee.

Appellee was duly elected. 50 Ark. 277. But, at all events, the office became vacant upon the publication of the census bulletin of October 31, 1900, and the governor had the right to appoint. 48 Ark. 82. Const. Amend. No. 4.

BATTLE, J. Upon the supposition that Lawrence county, in this state, contained over 15,000 inhabitants, the democratic party in March, 1900, held a primary election, and nominated T. M. Duvall for county clerk, and C. C. Childers for circuit clerk, of that county. In June, 1900, the federal census of Lawrence county was taken by the enumerators appointed for that purpose. On the third day of September, 1900, at a general election held on that day, C. C. Childers was elected circuit clerk, and T. M. Duvall, county clerk, of said county. On the third day of October, 1900, the director of the census published a bulletin in which he stated that the population of Lawrence county, according to the federal census of 1900, exceeded 15,000 inhabitants. On the 31st day of October, 1900, the governor of this state appointed Duvall clerk of the county and probate courts of that county to fill a vacancy occasioned by the last federal census showing that the inhabitants of that county exceeded 15,000. Duvall qualified and entered upon the discharge of the duties of the office. The question is, who is the county clerk of Lawrence county? The Lawrence circuit court held that Duvall is.

Section 19 of article 7 of the constitution of this state provides how the office of the clerk of the county and probate courts shall be filled. It declares that it shall be filled by the clerk of the circuit court. The constitutional convention of 1874 evidently did not intend that this should continue longer than the affairs of the county should require, and believed that the county would need two clerks when its population exceeded 15,000 inhabitants. Hence it provided in this section "that in any county having a population exceeding 15,000 inhabitants, as shown by the last federal census, there shall be elected a county clerk, in like manner as clerk of the circuit court, who shall be *ex officio* clerk of the

S C—22

probate court of said county." This is the condition upon which the county is allowed two clerks. It (the convention) did not intend that the federal census of 1870, which was the last census at the time the constitution of 1874 was adopted, should for all time determine when the condition for which it provided existed. It provided for counties having a population in excess of 15,000 inhabitants. This is a condition, present and future, for which it provided. There was and is no reason for discrimination in favor of one county against another of the same population. Counties acquiring the requisite population after the adoption of the constitution would doubtless need, and be entitled to, two clerks, as much as those whose population already exceeded 15,000 inhabitants. The federal census was adopted as the guide to determine when the condition provided for shall arise, and the last one made was to be the criterion to govern, as it would more accurately furnish the information needed. We therefore conclude that, whenever a county acquires the necessary population, according to the last federal census, it is entitled to a clerk of the county and probate courts; that the clerk of the circuit court no longer holds the same *ex officio;* and that the two offices become separate and independent. Treating the office of clerk of the county court as vacant, as a consequence of its separation from that of clerk of the circuit court, the convention provided that it should be filled by election, the same provision that was then made for the filling of other vacancies in office. There was no other provision made for the filling of it until the next general election. Indeed, there is no more reason why there should be than in cases where it becomes vacant by the death of the occupant. But this provision of the constitution, in this respect, has been changed by a subsequent amendment, which declares: "The governor shall, in case a vacancy occurs in any state, district, county or township office in the state, either by death, resignation or otherwise, fill the same by appointment, such appointment to be in force and effect until the next general election thereafter." Under this amendment a vacant office should be filled by the appointment of the governor until the next general election, so much of the constitution as authorized special elections being abrogated.

When, under the constitution, was the clerk of the county court of Lawrence county to be elected or appointed? Evidently, not until so much of the census of 1900 as related to its population was complete and ready to be officially promulgated. So long

as the enumeration of its inhabitants for that year was subject to the examination and revision of an officer, it was not the census. The work that was to make it such was not finished. Until the law authorized the announcement of the enumeration as the census, no official notice of it as such could be taken; and, until official notice could be taken of it, no election or appointment could be based upon it. When was the last federal census—the census of 1900—complete, and when could official notice have been taken of it?

By an act of congress entitled, "An act to provide for taking the twelfth and subsequent censuses," approved March 3, 1899, it was provided that a census of the population of the United States should be taken in 1900, under the supervision of an officer to be appointed by the president of the United States, by and with the advice of the senate, and to be known as the "director of the census." The information required by the act was to be collected, under the direction of the director of the census, by supervisors, enumerators, and special agents. The supervisors were to be appointed by the director, and they were to employ, with the consent of the director, the enumerators in their respective districts, and were to examine and scrutinize the returns of the enumerators, and, in the event of discrepancies or deficiencies appearing in the returns for their respective districts, to use all diligence in causing the same to be corrected and supplied, and were to forward to the director the complete returns for their respective districts in such time and manner as the director should prescribe. It was the duty of each enumerator to obtain all the information required by the act as to population in his subdivision as of the date of June 1st, 1900, and to forward his original schedule, duly certified, to the supervisor of census of his district, as his return, on or before the 1st day of the following July. If any portion of the enumeration or census appeared to have been negligently or improperly taken, and was by reason thereof incomplete or erroneous, the director was authorized to cause the same to be amended or made anew under such methods as was in his discretion practicable. No supervisor, supervisor's clerk, enumerator, special agent, or other employee had or has authority, without the permission of the director, to communicate any information gained by him in the performance of his duties to any person except the officers in the census department authorized by the act to receive the same. The director of the census was authorized to print, publish, and

distribute from time to time bulletins and reports of the preliminary and other results of the various investigations required by the act; and it was his (director's) duty, upon the request of the governor of any state or territory, or the chief officer of any municipal government, to furnish such governor or municipal officer with a copy of so much of the population returns as will show the names, with the age, sex, color, or race, and birthplace, only, of all persons enumerated within the territory in the jurisdiction of such government, upon payment of the actual costs of making such copies. According to this synopsis of the act of March 3, 1899, it appears that the reports of the work of all persons taking the enumeration of the inhabitants of the United States was to be made to the director of the census, and were subject to his approval, and that he alone was authorized to make known the result. He was authorized to do so by printing, publishing and distributing bulletins and reports, or by furnishing a governor or chief officer of any municipal government, at his request and expense, copies of parts of the population returns. It is only by means of the printing, publishing and distributing of the bulletins and reports that he is authorized to give the information to the public before the publication of the entire census of the population of the United States in the form of volumes, which are required to be published not later than the first of July, 1902. Until this is done, or the volumes are published, we cannot know that the census is complete and final, and what it is; for these are the only means provided by law for making known the census. No report is required to be filed subject to inspection by the public. Until the means of information provided by law were or are furnished, it is clear that no official notice could have been or can be taken of the census for the purpose of electing or appointing a county clerk; the officers of the election could not lawfully hold an election for that purpose, and the governor could not appoint.

On the 3d day of October, 1900, the director of the census, by the publication of a bulletin, made known that the population of Lawrence county exceeded 15,000. This was the first time it was lawfully made known, and official notice could have been taken of the fact; and soon after this the governor of the state filled the office of clerk of the county court of that county by appointing T. M. Duvall county clerk. The appointment was lawfully made.

Judgment affirmed.