HOLCOMB et al. v. SPIKES. (No. 1829.)

(Court of Civil Appeals of Texas. Amarillo. June 6, 1921. Rehearing Denied June 29, 1921.)

1. Census ⊜⟹2—General definiton of "census" must be considered in light of acts of Congress for taking it.

The general definition of the "census" as an official enumeration of people and as a public record containing not merely a sum total, but an official list of the names of all the inhabitants, and subject to public inspection, must be considered in relation to the national census in the light of the acts of Congress authorizing the taking of the census under consideration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Census.]

2. Taxation ⊜⟹546—Census takes effect to determine population of county as to election of tax collector when portion relating thereto is completed and ready to be officially promulgated.

The national census which determines whether a county shall elect a tax collector under Const. art. 8, § 16, is so much of the last national census relating to the population of that county as had been completed and ready to be officially published.

3. Census ⊜⟹7—Official notice cannot be taken until authorized announcement.

Until the law for the taking of a national census authorized the announcement of the enumeration, no official notice of the census as such can be taken.

4. Census ⊜⟹7—Taxation ⊜⟹546—Issuance of bulletin giving population of county is official promulgation of census as respects election of tax collector.

Since Act Cong. March 3, 1919, providing for the fourteenth and subsequent decennial censuses, did not expressly provide for the official promulgation of the results of the censuses, and did not expressly repeal Act March 6, 1902 (Comp. St. § 4414), authorizing the Director of the Census to publish and distribute bulletins and reports of the results of the various investigations by him, the issuance of a bulletin by the Director of the Census

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

stating the population of a particular county is the completion of the census as to that county, of which official notice can be taken in determining whether the county has a population entitling it to elect a tax collector.

5. Census ⟨⟩7—Certificate that bulletin was subject to correction does not prevent its being complete.

The fact that the Director of the Census issued a certificate stating the population of the county as shown by the census bulletin issued by him to be subject to correction, though in fact it was not thereafter corrected, does not make the bulletin incomplete as the promulgation of the census of that county or prevent official notice being taken of the population as therein stated.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by S. C. Spikes against C. A. Holcomb and others to establish plaintiff's right to the office of tax collector. Judgment for the plaintiff, and defendants appeal. Affirmed.

W. H. Bledsoe and Percy Spencer, both of Lubbock, for appellants.

J. E. Vickers and W. F. Schenck, both of Lubbock, for appellee.

HUFF, C. J. C. A. Holcomb was elected sheriff of Lubbock county November 2, 1920. S. C. Spikes was elected tax collector. The other appellants in this case were county judge and county commissioners of Lubbock county. The issue involved in this case is whether or not at the November election, 1920, Lubbock county had a population of 10,000, as determined by the next preceding census of the United States. Lubbock county under the 1910 census had a population of less than 10,000, but under the 1920 census the population is shown as 11,096. The appellee, S. C. Spikes, having noticed in the Dallas News prior to the July primaries a report that the population of the county was in excess of 10,000 applied to have his name placed on the official ballot as the Democratic candidate for the office of tax collector, but the application came too late for his name to go on the ticket. However, the voters of the county, by writing the appellee's name on the ticket, nominated him to such office. His name was certified as nominated by the party, and was placed on the official ballot at the November, 1920, election as a Democratic candidate. Having received the highest number of votes for the office, a certificate of election was issued to him by the county judge on November 26, 1920. The bonds required by law were prepared, duly signed, and tendered to the commissioners' court by the appellee, but were rejected by the commissioners court because "the official bond of S. C. Spikes was not approved for the reason that, while the court realized the bond is in proper form and is good and sufficient, but in the judgment of the court C. A. Holcomb, under the facts and circumstances, is entitled to the office." After the rejection of the bond appellee, Spikes, instituted suit against Holcomb, praying for a writ of injunction enjoining the said Holcomb and restraining him from exercising the functions of tax collector, and to restrain him from appropriating the fees of the office and against the county judge and commissioners to compel them to approve the bond of the appellee and install him in the office of tax collector. It is conceded in this case that the appellee received a majority of the votes and received his certificate of election, and that his bonds were in proper form and the sureties thereon sufficient, and that Holcomb was duly elected sheriff of that county. The only question presented for our determination is whether the census taken in 1920 determined the question under the Constitution of this state of the population of Lubbock county. The facts show that the Dallas News and other papers published the result of the census, giving Lubbock county over 10,000 inhabitants. On September 30, 1920, the following certificate was issued:

"I hereby certify that according to a preliminary count, subject to correction, of the returns of the fourteenth census of the United States, on file in the Bureau of Census, the population of the county of Lubbock, state of Texas, taken as of January 1, 1920, is 11,096. [Signed] Sam L. Rogers, Director of the Census."

And on the 10th of November, 1920, the following certificate:

"I hereby certify that according to the official count of the returns of the fourteenth census of the United States, on file in the Bureau of Census, the population of the county of Lubbock, state of Texas, taken as of January 1, 1920, is 11,096." Signed by the Director.

On the 30th day of September, 1920, the Director wrote a letter to John R. McGee, county attorney, in which he states:

"In compliance with your request of September 24th I take pleasure in inclosing herewith an official certificate of the population of Lubbock county, Texas, as shown by a preliminary county, subject to correction, of the returns of the fourteenth census, taken as of January 1, 1920"

—inclosing a bulletin to McGee, which was offered in evidence, which is as follows:

"Released for immediate use, Department of Commerce, Bureau of the Census, Washington. Fourteenth Census, preliminary announcement of population, subject to correction. Lubbock county, Texas.

| 1920 | 1910 | 1900 |
|------|------|------|
| 11,096 | 3,624 | 293" |

The precincts of the county are given, which are not considered essential in this case; also a letter and bulletin addressed and inclosed to the Chamber of Commerce of the city of Lubbock. The letter and bulletin show the same facts as shown in the letter and bulletin sent to McGee. A trial was had before the court without a jury, and judgment rendered in favor of S. C. Spikes on the 7th of January, 1921, commanding the defendants, commissioners' court of Lubbock county, Tex., to approve in their official capacity the bond of appellee as tax collector, and further directing the appellant C. A. Holcomb to turn over to appellee all the books, papers, etc., of said office after the bonds of appellee were approved by the comptroller and after S. C. Spikes should have taken the oath of office.

The first and only assignment to be discussed is:

"The judgment is contrary to the law and evidence in that the undisputed evidence shows that defendant C. A. Holcomb was the duly elected and qualified sheriff of Lubbock county, Tex., and as such was entitled to the office of tax collector of Lubbock county, Tex., under the Constitution and laws of the state."

Article 8, § 16, of the Constitution of this state reads:

"The sheriff of each county, in addition to his other duties, shall be the collector of taxes therefor. But in counties having 10,000 inhabitants, to be determined by the last preceding census of the United States, a collector of taxes shall be elected, to hold office for two years and until his successor shall be elected and qualified."

[1] The next preceding census must determine the inhabitants of the county to be 10,000 before the office of tax collector is created for that county.

"A census must be an official enumeration of the people, and as such a public record containing not merely a sum total, but an official list of the names, of all the inhabitants preserved in public archives, and, except so far as the statute under which it is taken prescribes otherwise, subject to public inspection." 11 C. J. p. 70.

[2, 3] The definition above is, of course, general, and must be considered in the light of acts of Congress authorizing the taking and under the provisions of which the census for 1920 was taken. Counsel for appellant state they have failed to find any provision in the act of Congress itself as to when the census takes effect. We think it is evident that the census which is to determine the inhabitants is so much thereof as related to its population, which was completed and ready to be officially pomulgated. Until the law authorized the announcement of the enumeration of the census, no official notice of it as such could be taken. Nelson v. Edwards, 55 Tex. 389; Wolfe v. Moorhead, 98 Minn. 113, 107 N. W. 728; Lancaster v. Owensboro (Ky.) 72 S. W. 731; Childers v. Duvall, 69 Ark. 336, 63 S. W. 802.

[4] Congress, by act of March 3, 1919 (40 Stat. 1291), provided for the fourteenth and subsequent decennial censuses. The enumeration of the population by the act was to be taken as of the 1st day of January, 1920, by the Director General, and to that end he was authorized to employ supervisors, clerks, enumerators, interpreters, special agents, etc. The enumerator was to commence the enumeration of his district on the day following the 1st day of January, and in any event it is made the duty of each enumerator to prepare the returns and to forward the same to the supervisor of his district within 30 days from the commencement of the enumeration of his district. He is required to forward the original schedules properly filled out and duly certified to the supervisor of his district as his returns under the provisions of the act. In the event of discrepancies or deficiencies being discovered in these schedules, he shall use all diligence in correcting or supplying the same. The supervisor is charged with the duty to consult with the Director of Census in regard to division of his district; to designate suitable persons as enumerators to the Director, etc., and "to examine and scrutinize the returns of the enumerators, and in the event of discrepancies or deficiencies appearing in any of the said returns, to use all diligence in causing the same to be corrected or supplied; to forward the completed returns of the enumerators to the Director at such time and in such manner as shall be prescribed." U. S. Comp. St. Ann. Supp. 1919, § 4388c. It is made a felony for the supervisor, enumerator, clerk, etc., to publish or communicate, without authority from the Director of Census, any information coming into his possession by reason of his employment. By section 4388n, Comp. Stats. vol. 1, 1919 Suppl., the Director of Census is authorized, at his discretion, upon written request of the Governor of any state or territory, or of a court of record, "to furnish * * * certified copies of so much of the population or agricultural returns as may be requested." He is "further authorized, in his discretion, to furnish to individuals such data from the population schedules as may be desired for genealogical or other proper purposes." Under section 4388e, when it appears that any portion of the census has been negligently or improperly taken, and is by reason thereof incomplete or erroneous, the Director "may cause such incomplete and unsatisfactory enumeration and census to be amended or made new."

"The period of three years beginning the first day of July next preceding the census provided for in section 1 of this act shall be known as the decennial census period, and the reports

upon the inquiries provided for in said section shall be completed and published within such period." Section 4388aa.

Provision is made for the appointment of an Assistant Director and other officers during the decennial census period; in other words, to establish a census office. Sections 915–919. In so far as we are able to ascertain, except as above noted, the act of March 3, 1919, does not otherwise provide for publishing or rather point out the manner of publishing the census, or giving it to the public. Under the act of March 6, 1902, the census printing office was abolished ·and the equipment was to be turned over to the public printer, "and the Director of the Census is hereby authorized and directed to have printed, published, and distributed, from time to time, bulletins and reports of the preliminary and other results of the various investigations authorized by law; and all of said printing and binding shall be done by the public printer of the government printing office." Volume 5, U. S. Comp. Stats. 1916, § 4414. This section does not seem to have been repealed by the act of 1919, which latter act practically repeals and supersedes the act of 1909. It would seem by the act of 1902 duties were imposed upon the Director to publish and distribute bulletins and reports of the preliminary and other results of the various investigations authorized by law. This, in so far as we can ascertain, is the only method to inform the public and of giving it access to the information ascertained and compiled by the enumerators and supervisors. It would seem when bulletin is so published and distributed it then becomes an official pronouncement under the law, of which the public and all officials may take notice. The law under which the census of 1920 was taken is different in some respects from the law in force under which the case of Childers v. Duvall, 69 Ark. 336, 63 S. W. 802, was decided. It will be seen that the opinion in. that case rests upon the proposition that the law under which the census of 1900 was taken, as related to the population of the county, was not ready to be officially promulgated, and until the law authorized the announcement of the enumerators as the census no official notice of it as such could be taken. The bulletin in that case was not published until after the election, and after the election and after the issue of the bulletin the Governor made an appointment of Duvall, who was held to be entitled to the office over Childers, who had been elected at· the general election, on the ground that there was no official announcement of the census prior to that time. In this case the undisputed facts show the Census Bureau, under the signature of its Director, issued a bulletin showing before the election the population of Lubbock county to be 11,096. This ·seems to

have been official. This information appears to have been given to leading papers of the state. Under the law this information could have been obtained in no other way than through the Director's official act, without violating the law and subjecting the parties to a charge of felony. We think the case of Nelson v. Edwards, 55 Tex. 389, indicates, when the enumerators' list is filed, as required by the law, as it then existed, this made it such evidence as that public officials could and should act upon it. There was no other method provided or shown requiring a proclamation placing the census in effect. The case of the State v. Braskamp, 87 Iowa, 588, 54 N. W. 532, is regarded by us as of value on the question here at issue. Code of Iowa, § 231, provided:

"In counties having a population of sixteen thousand inhabitants or less, the grand jury shall be composed of seven members, * * * such population shall be determined by the last preceding national or state census."

We quote from that case the following:

"While appellants concede that according to the federal census, 1890, the grand jury was properly composed of seven members, their contention is that that census· had not been officially announced at the time of the organization of the grand jury, in January, 1891, and that therefore the state census of 1885 should have ·controlled as to the number of grand jurors. The federal census of 1890 was provided for in chapter 319, p. 653, Supplement to 1 Rev. Stat. U. S. (2d Ed., 1874–91). That act does not provide any time at which the taking of the census shall be deemed complete, nor for ·any official announcement of the census. Section 23 provides that upon request of any municipal government the Superintendent of Census shall furnish said government with a copy of the names, age, sex, birthplace, and color or race of all persons enumerated within the territory in the jurisdiction of such municipality. Appellants insist that the officers and court selecting ·the grand jury could not take judicial notice of the federal census until it was officially announced, and that therefore the selection should have been upon the basis of the state census of 1885. The last census preceding the selection of persons from whom to draw jurors for 1891 was the national census taken in the month of June, 1890. The population of Sioux county, as shown by that census, was a matter of public notoriety and of common knowledge among the people of the county before any action was taken for the selection of persons from whom to draw jurors for 1891, and some 15 months before the defendants were indicted. It is a familiar rule * * * that facts of universal notoriety need not be proven. 'Courts will take notice of whatever is generally known within the limits of their jurisdiction; and, if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper.' Brown v. Piper, 91 U. S. 42; People v. Williams, 64 Cal. 87, 27 Pac. 939. It is held that the courts can take judicial knowledge of the result of the national census. See, also, Whart. Ev. § 338; O'Ferrall v. Davis, 1 Iowa, 560; State v.

Minnick, 15 Iowa, 123; Threshing Machine Co. v. Haven, 65 Iowa, 359, 21 N. W. 677. Under our law the county auditor, clerk of the court; and the court are required to act upon the basis of the population of the county as shown by the last preceding census, in selecting jurors. There is no provision for proving to them what the last preceding census shows to be the population of the county. Clearly the law contemplated that they shall take official notice of the fact. There is no evidence in the record to show what the population of the county was according to the census of 1888; but appellants—properly, we think—asked the court to take judicial notice of what it was. For the same reason we may surely take notice of what the population was as shown by the census of 1890. By doing so appellants were given a grand jury composed of seven members as authorized and required by the Code. Had the acts of Congress fixed the time or prescribed a condition upon which the census of 1890 should be deemed complete or in effect, the census of 1885 would have been the last preceding until that time. In the absence of such a provision the census of 1890 became the last preceding census, for the purpose of the selection of jurors, as soon as the population of the county was ascertained therefrom."

See State v. Marion County, 128 Mo. 427, 30 S. W. 103, 31 S. W. 23; 23 C. J. p. 161, and cases cited in note.

The decennial census period required that reports shall be made within that period, and not at the end of that period. Under the act of 1902 the Director is directed to publish and distribute from time to time bulletins and reports of the result. It must be done within the three years, but when published and distributed it is an official act upon which officers and others may rely. The bulletin was issued before the election, showing the number of inhabitants in Lubbock county, which the Constitution declared required a collector.

[5] It is insisted that the Director of Census gave a certificate to the effect that the count for the census was subject to correction. If this certificate was authorized by the act, we do not believe it should be held that this evidenced that the census was not complete under the terms of the law when the Director had officially published and distributed bulletins that the population was over 10,000. It is not a certificate that the official count was incomplete or was not correct. In fact, his subsequent certificate shows it was correct, and that his bulletin had been properly issued. The bulletin, we believe, officially announced the population as shown by the list forwarded by the enumerators of Lubbock county and supervisors of the district, and that as filed in the archives of the census office it was open to the public. The statute authorized, if there was an incomplete or erroneous enumeration, that it could be amended or taken anew.

The bulletin does not indicate that it was incomplete or negligently done, but rather indicates it may be subject to correction. It does not carry the idea that it was incomplete, but that it was complete. We think, when the bulletin was given to the public, officials who were required to act with reference thereto may take official notice that the enumeration had been made and was then in the archives of that office, subject to the inspection of the public in which the population of Lubbock county had been determined. The fact that it may be corrected does not indicate that the census was not complete and then a public document under the law. We believe the election officers of Lubbock county were acting within the law when they ordered the election for tax collector and declared appellee elected to that office.

We therefore affirm the judgment of the trial court.