Gerald C. Mann
Attorney General

Superseded by
art. 29d. P.C.d.

Hon. John W. Moore            Opinion No. O-2524
County Attorney              When does the office of Sheriff,
Jack County                  Tax Collector and Assessor become
Jacksboro, Texas             separated under Articles 7245 and
                             7246, R.C.S., when the census of
                             said county was announced by the
                             District Director of the Federal
                             Census Bureau, after the time lim-
                             it for filing on the Democratic
                             Ticket, and prior to the July Pri-
                             mary?  And related question.

Dear Sir:

        We have received your letter of recent date, where-
in you request the opinion of this Department upon the above
stated questions.  For factual background of your request, we
quote from your letter as follows:

        "I am submitting the following questions
for an opinion of your department:

        "1.  When does the office of Sheriff, Tax
Collector and Assessor become separated under
articles 7245 and 7246, R.C.S., when the cen-
sus of said county was announced by the Dis-
trict Director of the Federal Census Bureau,
after the time limit for filing on the Demo-
cratic ticket, and prior to the July Primary?

        "2.  Would the successful candidate for
the office of Sheriff, Collector and Assessor,
in a county whose Federal Census in 1930 was
under 10,000, but whose census announced by the
District Director of the Census Bureau after the
filing time for candidates in the Democratic Pri-
mary and prior to the July Primary, was in ex-
cess of 10,000, be the Democratic Nominee for the
combined office?

        "The situation in our county is that the
office of Sheriff, Tax Collector and Assessor

have been combined under the 1930 Federal Census which was 9,046. The County Judge was notified by the District Director of the Federal Census Bureau on July 1, 1940, that the population of Jack County was 10,135. Candidates for the office had filed, based on the 1930 census, for the office of Sheriff, Collector and Assessor as one office. It is now of course too late to file for the separate offices on the Democratic ticket, if such would be the case under the law, and under the facts set out here.

"* * *.

"In this case here the candidates that have announced and filed for the combined office are in doubt as to the status of the office they are running for, and that some write in candidate may receive a few votes or a majority for the office of Assessor and Collector, and be declared entitled to that office. When in fact if the two offices are separated they might want to run for the office of Assessor and Collector.

"* * *."

Article V, Section 23 of the Constitution of Texas provides:

"There shall be elected by the qualified voters of each county a sheriff, who shall hold his office for the term of two years, whose duties, and perquisites, and fees of office, shall be prescribed by the Legislature, and vacancies in whose office shall be filled by the Commissioners' Court until the next general election for county or State officers."

Article VIII, Section 14 of the Constitution of Texas, adopted in 1932, provides, in part:

"There shall be elected by the qualified electors of each county at the same time and under the same law regulating the election of State and County officers, an Assessor and Collector of Taxes, who shall hold his office, for two (2) years and until his successor is elected and qualified; * * *."

Article VIII, Section 16 of the Constitution of Texas, adopted in 1932, provides:

"The sheriff of each county in addition to his other duties shall be the Assessor and Collector of Taxes therefor; but, in counties having ten thousand (10,000) or more inhabitants, to be determined by the last preceding census of the United States, an Assessor and Collector of Taxes shall be elected to hold office for two (2) years and until his successor shall be elected and qualified."

The Legislature, in order to give effect to the above constitutional provisions, enacted in 1933, Articles 7245 and 7246, Vernon's Civil Statutes.

Article 7245 provides:

"In each county having ten thousand (10,-000) inhabitants, to be determined by the preceding Federal Census, there shall be elected at the regular biennial election an Assessor and Collector of Taxes, who shall hold his office for two (2) years."

Article 7246 provides:

"In each county having less than ten thousand (10,000) inhabitants, the sheriff of such county shall be the Assessor and Collector of Taxes, and shall have and exercise all the rights, powers and privileges, be subject to all the requirements and restrictions, and perform all the duties imposed by law upon assessors and collectors; and he shall also give the same bonds required of an assessor and collector of taxes elected."

By construing the above constitutional provisions and Articles 7245 and 7246, supra, together, we see that in counties having less than 10,000 inhabitants, there is no separate office of Tax Assessor and Collector, but the offices of Sheriff and Tax Assessor and Collector are combined, and the sheriff is ex-officio Assessor and Collector, and as such is simply performing duties he is not required to perform in counties containing more than 10,000 inhabitants.

The right to elect an individual to fill the separate office of Tax Assessor and Collector arises in Jack County when the official census of that county is in excess of 10,000 inhabitants.

Under the Act of Congress, June 18, 1929, and May 17, 1932, (13 U.S.C.A., Sec. 201, et seq.), a census of population shall be taken by the Director of Census in the year 1930 and every ten (10) years thereafter.

Under the 1930 census, Jack County had a population of less than 10,000 inhabitants. The 1940 census must determine, therefore, that Jack County has a population of 10,000 inhabitants or more before a Tax Assessor and Collector may be elected.

Our first inquiry is as to when the 1940 census determination becomes effective. Touching this question, we quote as follows from the case of ERVIN v. STATE, 44 S.W.(2d) 380:

"There is no specific provision in the Act of Congress June 18, 1929 (13 USCA § 201 et seq.), with reference to the time of final announcement of the census; nor is there any provision as to the time the census shall become effective. Under the terms of the Act of Congress March 6, 1902, § 11 (13 USCA § 4), the Director of the Census is required 'to have printed, published and distributed, from time to time, bulletins and reports of the preliminary and other results of the various investigations authorized by law.' Substantially to the same effect is Section 13, Act of Congress June 18, 1929 (13 USCA § 213) which imposes on the Director the duty to have printed preliminary and other census bulletins and final reports of the results of the several investigations. Section 205, 13 USCA, reads as follows: 'Each supervisor shall perform such duties as may be imposed upon him by the Director of the Census in the enforcement of this chapter,' etc.

"In Holcomb et al. v. Spikes, 232 S.W. 891, 894, the Court of Civil Appeals at Amarillo, Tex., in holding that a preliminary announcement of the census by the Director was an official pronouncement of which the public and all officials may take notice, said: 'It would seem by the act of 1902

duties were imposed upon the Director to publish and distribute bulletins and reports of the preliminary and other results of the various investigations authorized by law. This, in so far as we can ascertain, is the only method to inform the public and of giving it access to the information ascertained and compiled by the enumerators and supervisors. It would seem when bulletin is so published and distributed it then becomes an official pronouncement under the law, of which the public and all officials may take notice. * * * In this case the undisputed facts show the Census Bureau, under the signature of its Director, issued a bulletin showing before the election the population of Lubbock County to be 11,096. This seems to have been official. This information appears to have been given to leading papers of the state. Under the law this information could have been obtained in no other way than through the Director's official act, without violating the law and subjecting the parties to a charge of felony. We think the case of Nelson v. Edwards, 55 Tex. 389; indicates when the enumerators' list is filed; as required by the law, as it then existed, this made it such evidence as that public officials could and should act upon it. There was no other method provided or shown requiring a proclamation placing the census in effect.'

"* * *."

The holding of the HOLCOMB v. SPIKES case, 232 S.W. 891 (writ of error dismissed), quoted from in the Ervin case, supra, involved the following facts:

"HUFF, C. J. C. A. Holcomb was elected sheriff of Lubbock County November 2, 1920, S.C. Spikes was elected tax collector. The other appellants in this case were county judge and county commissioners of Lubbock County. The issue involved in this case is whether or not at the November election, 1920, Lubbock County had a population of 10,000, as determined by the next preceding census of the United States. Lubbock County under the 1910 census had a population of less than 10,000, but under the 1920 census the population is shown as 11,096. The appellee,

S. C. Spikes, having noticed in the Dallas News prior to the July primaries a report that the population of the county was in excess of 10,000 applied to have his name placed on the official ballot as the Democratic candidate for the office of tax collector, but the application came too late for his name to go on the ticket. However, the voters of the county, by writing the appellee's name on the ticket, nominated him to such office. His name was certified as nominated by the party, and was placed on the official ballot at the November, 1920, election as a Democratic candidate. Having received the highest number of votes for the office, a certificate of election was issued to him by the county judge on November 26, 1920. The bonds required by law were prepared, duly signed, and tendered to the commissioners' court by the appellee, but were rejected by the commissioners' court because 'the official bond of S. C. Spikes was not approved for the reason that, while the court realized the bond is in proper form and is good and sufficient; but in the judgment of the court C. A. Holcomb, under the facts and circumstances, is entitled to the office.' After the rejection of the bond appellee, Spikes, instituted suit against Holcomb, praying for a writ of injunction enjoining the said Holcomb and restraining him from exercising the functions of tax collector, and to restrain him from appropriating the fees of the office and against the county judge and commissioners to compel them to approve the bond of the appellee and install him in the office of tax collector. It is conceded in this case that the appellee received a majority of the votes and received his certificate of election, and that his bonds were in proper form and the sureties thereon sufficient, and that Holcomb was duly elected sheriff of that county. The only question presented for our determination is whether the census taken in 1920 determined the question under the Constitution of this state of the population of Lubbock County. The facts show that the Dallas News and other papers published the result of the census, giving Lubbock County over 10,000 inhabitants. On September 30, 1920, the following certificate was issued:

"'I hereby certify that according to
a preliminary count, subject to correction,
of the returns of the fourteenth census of
the United States, on file in the Bureau of
Census, the population of the county of Lub-
bock, state of Texas, taken as of January 1,
1920, is 11,096.'  (Signed) Sam L. Rogers,
Director of the  Census.

"And on the 10th of November, 1920, the follow-
ing certificate:

"'I hereby certify that according to the
official count of the returns of the four-
teenth census of the United States, on file
in the Bureau of Census, the population of
the county of Lubbock, state of Texas, taken
as of January 1, 1920, is 11,096.'  Signed by
the Director.

"On the 30th day of September, 1920, the
Director wrote a letter to John R. McGee, county
attorney, in which he states:

"'In compliance with your request of
September 24th, I take pleasure in inclos-
ing herewith an official certificate of the
population of Lubbock County, Texas, as shown
by a preliminary count, subject to correc-
tion, of the returns of the fourteenth census,
taken as of January 1, 1920.'

-inclosing a bulletin to McGee, which was of-
fered in evidence, which is as follows:

"'Released for immediate use, Department
of Commerce, Bureau of the Census, Washing-
ton.  Fourteenth Census, preliminary an-
nouncement of population, subject to correc-
tion.  Lubbock County, Texas.

| 1 9 20 | 1 9 10 | 1 9 0 0 |
|--------|--------|---------|
| 11,096 | 3, 624 | 293'***." |

The court held that the election officers of Lub-
bock County were acting within the law when they ordered the
election for tax collector and declared Spikes elected to
that office.  It appears that the election officers in order-
ing the election for tax collector, and in certifying Spikes

as the party nominee, and in issuing to him the certificate of election, did so after the publication of the preliminary bulletin by the Director of the Census, which bulletin showed Lubbock County to have a population of 10,000 inhabitants or more.

The case is authority for the proposition that the election officials may take notice of a preliminary announcement of the census by the Director, and if such determines a county to have a population of 10,000 inhabitants or more, an election for a Tax Assessor and Collector may be ordered.

Therefore, in view of the foregoing authorities you are respectfully advised that it is the opinion of this Department, in answer to your first question, that after the publication of the preliminary bulletin of the Director of the Census showing Jack County to have a population of 10,000 or more inhabitants, there arose the right of the voters of Jack County to elect a separate Assessor and Collector of Taxes, and the corresponding right for a person to run for this separate office. It follows, of course, that in order for an individual to appear on the general election ballot as the party nominee for the separate office of Assessor and Collector of Taxes for Jack County, he must have been lawfully nominated by the party for such office in the party primary.

You are further respectfully advised that it is the opinion of this Department, in answer to your second question, that the successful candidate, who has filed his name with the Democratic Executive Committee of Jack County for a place on the ballot of the Democratic Primary for nomination to the office of Sheriff and Assessor and Collector of Taxes will not be nominated to the combined office, but will only be nominated to the office of Sheriff.

This opinion is in accordance with the holding of our opinion Nos: O-1105 and O-2337, copies of which are enclosed herewith for your information.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ D. Burle Daviss
D. Burle Daviss, Assistant

DDB:ob:wb
Enclosures
APPROVED JUL 22, 1940
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED:  OPINION COMMITTEE
BY  BWB    Chairman