CITY OF DETROIT *v.* STATE COMMISSIONER OF REVENUE.

1. STATUTES—CLASSIFICATION—CENSUS—DATE OF ENUMERATION—
PUBLICATION.
    The date of enumeration will not be taken when applying a
    State statute wherein classification is based on latest Fed-
    eral census, rather than some subsequent later date when
    census results were published or became known, where to
    do so would cast doubt upon the validity of proceedings
    and official acts, as such result would be destructive of the
    orderly processes and functioning of government.

2. TAXATION—SALES TAX—INTANGIBLES TAX—DISTRIBUTION TO LO-
CAL UNITS OF GOVERNMENT—DATE OF ENUMERATION.
    The distribution to local units of government of sales-tax
    moneys, pursuant to the Constitution and of intangibles-tax
    moneys pursuant to statute, must be made on a basis as near-
    ly in accord with actual population as possible without resort
    to State-conducted censuses, hence are geared to the date
    of the enumeration itself and not to subsequent bulletins or
    determination of Federal officialdom of the time for pro-
    mulgation of results (Const 1908, art 10, § 23; CL 1948, § 205.-
    136, as amended by PA 1949, No 308).

3. SAME—COLLECTION OF SALES- AND INTANGIBLES-TAX MONEYS—
DISTRIBUTION.
    The rights of local units of government to State-collected
    sales- and intangibles-tax moneys distributable on a per
    capita basis become determinable as of the date provided
    for their distribution without regard to what it may have
    been at the time of collection (Const 1908, art 10, § 23; CL
    1948, § 205.136, as amended by PA 1949, No 308).

4. SAME—DISTRIBUTION OF STATE-COLLECTED TAXES—STRIKING OF
BALANCES—ADJUSTMENTS PENDING FINAL PROMULGATION OF CEN-
SUS FIGURES.
    The process of making adjustments and readjustments in suc-

REFERENCES FOR POINTS IN HEADNOTES
[7] 14 Am Jur, Costs, § 91.

ceeding tentative per capita distributions of sales- and intangibles-tax moneys as bulletins as to the census are published until the final census figures are promulgated by the Federal census bureau does not involve an unlawful striking of balances between independent accounts of the State and local units respectively nor the retrospective application of the law (Const 1908, art 10, § 23; CL 1948, § 205.136, as amended by PA 1949, No 308).

5. SAME—QUARTERLY DISTRIBUTION OF SALES-TAX MONEYS COLLECTED BY STATE.

Sales-tax moneys collected during a calendar quarter are not distributable to local units of government prior to the first day of the succeeding quarter (Const 1908, art 10, § 23).

6. MANDAMUS—PARTIES—DISTRIBUTION OF STATE-COLLECTED TAXES—COUNTIES AS CONDUITS.

City was a proper party plaintiff in mandamus proceeding to compel distribution of State-collected sales- and intangibles-tax moneys pursuant to preceding census until official promulgation of census figures has been made, where, notwithstanding distribution is required to be made to county treasurers, such treasurers are mere conduits between the State and local units of government, since city was a real party in interest (Const 1908, art 10, § 23; CL 1948, § 205.136, as amended by PA 1949, No 308).

7. COSTS—PUBLIC QUESTION—DISTRIBUTION OF STATE-COLLECTED TAXES—CENSUS.

No costs are allowed in mandamus proceeding to compel distribution of State-collected sales- and intangibles-tax moneys pursuant to a previous census, a public question being involved (Const 1908, art 10, § 23; CL 1948, § 205.136, as amended by PA 1949, No 308).

Mandamus by City of Detroit to compel Louis M. Nims, State Commissioner of Revenue, and others to make distribution of sales-tax and intangibles-tax revenues on basis of 1940 census. Submitted January 23, 1951. (Calendar No. 44,964.) Writ denied April 3, 1951.

*Paul T. Dwyer*, Acting Corporation Counsel, and *Helen W. Miller*, Assistant Corporation Counsel, for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Elbern Parsons,* Chief Assistant Attorney General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant.

*Amici Curiae:*

*Phillip J. Glennie,* City Attorney, Alpena.
*David L. King,* City Attorney, Bay City.
*Fred N. Searl,* City Attorney, Grand Rapids.
*Stanley Draganski,* City Attorney, Hamtramck.
*Alvin G. Dahlem,* City Attorney, Jackson.
*William A. Ewart,* City Attorney, Pontiac.
*Vincent Nash,* City Attorney, Saginaw.
*Charles B. Cozadd,* Attorney for Village of Wayne.
*Ralph F. Finley,* City Attorney, Berkley.
*Julius L. Berns,* for the Village (City) of Grosse Pointe Woods.
*Russell A. Searl,* City Attorney, East Lansing.
*Russel J. Comer,* Corporation Counsel for Taylor Township, Wayne County.
*Frederic J. Keppen,* City Attorney, Lincoln Park.
*Carl B. Weymouth,* City Attorney, East Detroit.
*George A. Weins,* City Attorney, Ypsilanti.
*Jesse W. Bollinger,* for the City of Garden City, Village of Inkster and the Township of Dearborn, Wayne County.
*Arthur E. Moore,* City Attorney, Huntington Woods.
*W. C. Hudson,* City Attorney, Royal Oak.
*Daniel W. Ross,* for City of Belleville and Van Buren Township, Wayne County.
*Dale H. Fillmore,* Corporation Counsel, City of Dearborn.
*Robert E. Childs,* and *Joel K. Underwood,* of counsel.

Dethmers, J. Plaintiff seeks mandamus in this Court to compel defendants, until such time as the final 1950 census figures are promulgated by the director of census, to make the State's 1950 and later distributions of sales-tax and intangibles-tax collections to local governmental units on the basis of the 1940 Federal decennial census, in accord, as plaintiff contends, with the pertinent provisions of the Constitution and laws of the State, which read as follows:

"There shall be returned to local governmental units and school districts by the method hereinafter set forth, one cent of a State sales tax levy on each dollar of sales of tangible personal property on the present statutory base (not rate). The State tax collecting authority shall divide the entire said sum without deduction and remit fifty per cent thereof among the school districts on the basis of the school census on·which primary school money is distributed for that fiscal year. *The balance of fifty per cent. shall be returned to counties* as a whole *on a population basis* and payment shall be made to the county treasurer *who shall remit to the respective cities, townships and villages within the ·county on a per capita basis.· Population computation shall be based on the last State-wide Federal census for purposes of division among counties and upon the same basis or upon any special Federal county-wide census, whichever is later, for intra-county division purposes.* All remittances provided shall be made on a quarterly basis." (Italics supplied.) Const 1908, art 10, § 23.

"During the month of July of each year the auditor general shall distribute to the several county treasurers the net revenues received under this act [intangibles tax act] during the previous fiscal year, less 3 per cent. of said revenues, which amount shall be credited to the general fund of the State as repayment of the cost of collection of this tax. *The*

*distribution to the county treasurers shall be upon a per capita basis according to the latest or each succeeding Federal decennial census. The county treasurer shall distribute the amount received by him among the cities, townships and villages within his county on a per capita basis according to the latest or each succeeding Federal decennial census or according to any special Federal county-wide census, whichever is later:* \* \* \* The moneys so returned to the cities, townships and villages shall be credited to the general fund and shall be available for general fund purposes." (Italics supplied.) Part of PA 1949, No 308 (CL 1948, § 205.136, as amended [Stat Ann 1949 Cum Supp § 7.556(6)]).

Defendants insist that the 1950 census figures must be used. At issue is the meaning, in particular, of those portions of the quoted provisions set forth above in italics. The parties, together with respective *amici curiae* supporting each, are agreed that the primary question is: "At what date can it be said there is a new Federal decennial census?" Plaintiff answers, at the completion of the census, when its final figures and results are officially promulgated by the director of the census. (As to the 1950 census this has not yet occurred.) At the outset of the census, say defendants, on the date as of which the enumeration is taken. (April 1, 1950, for census of that year.) In the briefs on both sides there appears at times, however, a wavering, on the basis of holdings in other jurisdictions, in favor of some intermediate date representing the time of release by census officials of preliminary bulletins or reports of census results, which are subject to subsequent correction and change. The question is novel in this State.

Plaintiff admits that defendants' position is supported by *Underwood* v. *Hickman,* 162 Tenn 689 (39 SW2d 1034) and *City of Twin Falls, ex rel. Cannon,*

v. *Koehler,* 63 Idaho 562 (123 P2d 715), in which salary increases for public officials were held effective from the dates as of which the enumerations were made, under statutory provisions for such increased salaries in certain units when they reached specified populations as shown by the Federal census.

Defendants appear to concede that plaintiff's position is supported by the 2 cases of *Lewis* v. *Lackawanna County,* 200 Pa 590 (50 A 162), in which an elected official was denied salary increase because the date of legal ascertainment of census results, showing a population warranting such increase, did not occur until after the official's election; (Involving the same question and with similar holding is *Commonwealth, ex rel. Woodring,* v. *Walter,* 274 Pa 553 [118 A 510]. In neither is it held that date of legal ascertainment is necessarily that of final promulgation.) and *Varble* v. *Whitecotton,* 354 Mo 570 (190 SW2d 244), in which it was held that a conviction by a jury selected in a manner provided by statute for counties with less than 400,000 population according to the last preceding national census was not invalid, despite the fact that the jury had been selected after the date of enumeration in a census, the results of which, when officially promulgated, disclosed a population of over 400,000. The court held that the statutory provision applicable to the county for the selecting of juries could not change until the official record of the new census was promulgated. To these cases supporting plaintiff perhaps should be added *Childers* v. *Duvall,* 69 Ark 336 (63 SW 802), in which it was held that the appointment of a county clerk, permissible under State constitution when the county reached a certain population as shown by the last Federal census, could be made only after the results of the census, showing such appointment to be warranted, were officially announced by the director of census.

A number of other cases are cited in the briefs. They may be grouped as follows: (1) *Wolfe* v. *City of Moorhead,* 98 Minn 113 (107 NW 728), *Broyles* v. *Mahaska County,* 213 Iowa 345 (239 NW 1), *State, ex rel. Martin,* v. *Ivins,* 59 NJL 364 (36 A 93), and *Buck* v. *Douglass,* 74 NJL 300 (65 A 848), involving censuses established by State law, in which the courts found from some express provision in the statutes involved an indication of legislative intent as to what should be the effective date of the applicable census. In none of these was the effectiveness thereof held to relate back to the date of enumeration. (2) *Holcomb* v. *Spikes* (Tex Civ App), 232 SW 891, involving the question of when a county became entitled, under the State constitution, by reason of the attainment of a specified population according to the last Federal census to elect a county tax collector; *Garrett* v. *Anderson* (Tex Civ App), 144 SW2d 971, involving the question of when the court might exercise the right to reduce the salary of its reporter which was by statute made dependent upon the county reaching a certain population according to the last Federal census; *Herndon* v. *Excise Board of Garfield County,* 147 Okla 126 (295 P 223), involving the question of when a new court might be created on the basis of achievement by the county of a certain population according to the last Federal census; *Board of Commissioners of Coal County* v. *Mathews,* 147 Okla 296 (296 P 481), involving the amount of the salary of a public official; *Elliott* v. *State, ex rel. Kirkpatrick,* 150 Okla 275 (1 P2d 370), involving the number of justices of the peace to be elected in a city; *State, ex rel. Clark,* v. *Board of Education of City of Salina,* 148 Kan 632 (84 P2d 507), in which the court disapproved a proposed bond issue under statute which prescribed certain population status, but made no reference to a census; and *People* v. *Dorius,* 49 Cal App2d 259 (121 P2d 508), in which

the jurisdiction of a criminal court, established under statute applicable to city's former population status was upheld. In this group of cases figures from preliminary results, reports or bulletins were accepted by the courts and the changed population statuses of the units involved were held in·effect as of the date of such reports. To this group might be added *Forde* v. *Owens,* 160 SC 168 (158 SE 147), in which the changed population status was held operative as of the date of a newspaper account of census results, and *State* v. *Braskamp,* 87 Iowa 588 (54 NW 532), in which a new population status was held in effect as of the date when the census results became a matter of public notoriety. The *Forde Case* involved the power of a city to adopt the commission form of government and the *Braskamp Case* the propriety of a grand jury drawing. In none of the cases in this group was it held that the changed population status related·back, for the purposes specified in the statutes or constitutional provisions involved, to the date of enumeration. (3) *People* v. *Wong Wang,* 92 Cal 277 (28 P 270), involving the jurisdiction of a criminal court, which is not strictly in point because the statute therein considered made no reference to a census, and also *Etowah Light & Power Co.* v. *Yancey,* 197 F 845, and *In re Cleveland's Claim,* 72 Okla 279 (180 P 852), neither of which is in point.

To summarize, it appears that as to the effective date of salary increases or decreases which are dependent upon a population status, 2 of the above cases hold it to be the enumeration date, 2 the date of a preliminary bulletin, and 2 the date of legal ascertainment of census results; that in 1 case the drawing of a jury in the manner provided by statute applicable to a smaller population was upheld on the theory that the new census, showing a changed population status, was not to be considered until

promulgation of its final results, while in another
case selection of a grand jury under a statute ap-
plicable to the larger population attained according
to the new census was upheld because the results
of the new census were a matter of common knowl-
edge at the time the jury was drawn; that in 2 cases
the creation of new courts on the basis of increased
population were or, if not objectionable for other
reasons, would have been held proper, if preceded
by preliminary bulletins on census results; that, in
1 case the validity of the appointment of a county
clerk was held dependent upon its occurrence after
promulgation of final census results, while in 2 other
cases the validity of like appointments or elections
were upheld when preceded by the release of pre-
liminary bulletins of census results, as was also a
city's adoption of a commission form of government.

It is not surprising that in the cited cases the
courts, in determining the jurisdiction of courts, or
the validity of the drawing of juries or of the ap-
pointment or election of public officials, have rejected
the date of enumeration as the time as of which the
statutory effects of a changed population status
shall become operative and, instead, have accepted
for that purpose some subsequent date when census
results were published or became known, inasmuch
as to do otherwise would result in the creation of a
period of chaos and confusion, between those 2 dates,
during which the jurisdiction of courts and the va-
lidity of proceedings and of official acts would be
in doubt, incapable of immediate ascertainment.
Such result, destructive of the orderly processes and
functioning of government, could not have been the
legislative intent in the enactment of the statutes
under consideration in those cases.    (Whether, in
such cases, the change of status resulting from reach-
ing a certain population level were to be held in ef-
fect as of the date of a preliminary bulletin as dis-

tinguished from the date of final promulgation of results, or vice versa, however, would make little practical difference ordinarily, unless the preliminary report disclosed a figure so near the dividing line as to cast in doubt what the final result might be.) On the other hand, no such untoward consequences as have just been considered could flow from a decision either way in cases involving the question of when salary increases, dependent upon population, shall take effect. Consequently, in such cases, when the legislative intent is not clearly expressed in the statute, circumstances do not so readily lend themselves to a disclosure of that legislative intent and, for that reason, the difference in results in the several cases of that kind, arrived at by the application of general definitions of the term "census," is understandable. Concerning these "salary" cases, plaintiff's brief contains the following:

"Had these cases involved the jurisdiction of courts, the selecting of jurors, the conducting of elections, the powers of cities, townships or villages, penal statutes, annexation proceedings * * * we doubt very much that these courts would have been able to adopt the theory which would relate back to the time of enumeration, the powers, duties or liabilities involved in such situations."

Despite a lack of uniformity in the decisions, the observation may be drawn from the cited cases that, when ascertainable, legislative intent is the guiding star. Accordingly, we are not impressed that the solution is to be found in the instant case, as indicated in the briefs, by the mere process of settling upon some definition, of general or universal application, of the term "last Federal census," which definition would be appropriate and controlling, as plaintiff suggests, in the construction of each of the several statutes in this State making some right,

duty, function, et cetera, dependent upon a speci-
fied population status according to the last Federal
census. We emphatically do not decide in this case
the meaning of terms employed in statutes not in-
volved in this case. The controlling question here
may not be so narrowly stated as to be simply, "At
what date can it be said there is a new Federal decen-
nial census?", but, rather, our inquiry must be,
"What did the people mean, in adopting article 10,
§ 23, by the provision that the return of sales-tax
moneys to local units shall be on a population basis
and that the computation of such population shall
be based on the last State-wide Federal census?",
and, further, "What was the legislative intent ex-
pressed by the provision in PA 1949, No 308, that
distribution of the intangibles-tax moneys to local
units shall be upon a per capita basis according to
the latest or each succeeding Federal decennial
census?"

Had the fact of population alone been intended to
be constantly controlling, there would have been no
occasion for reference to the Federal decennial cen-
sus. Had such been the intent, an enumeration for
purposes of intangibles-tax distribution would have
been necessary annually, and quarterly for the re-
turn of sales-tax moneys, both State-wide and for
each county, city, township and village in the State.
Failure to provide for such census by the State and
reference to the last Federal census rule out any such
intent.

It is evident that use of Federal census figures
was prescribed for the purpose of avoiding the dupli-
cation and multiplication of expense and effort which
would be involved in such enumerations by State
agencies. On the other hand, the people and the leg-
islature were not content to let the matter rest with
some out-of-date Federal census. The provisions
for the use not only of the *latest* Federal State-wide

or decennial census, but also of any later special
Federal county-wide census for distribution within
a county, we think disclose a clear intent that returns
or distributions should be made on a basis as nearly
in accord with actual population as possible without
resort to State-conducted censuses.  There is no in-
dication of an intent to fix some arbitrary basis,
utterly unrelated to need or use, for the distribution
of these tax moneys.  The distributions and returns
were intended to serve the purpose of helping to
finance the operations of local governmental units
in proportion to their respective needs, it being
thought, apparently, that the expense of such opera-
tions would bear some direct relationship to the
actual population in each of the units at the time
such expenses were being incurred.  It is inconceiva-
ble, therefore, that it could have been intended, as
would follow from plaintiff's contention, that the
relative changes which necessarily must be made, at
the time of a new census, in the proportionate re-
turns and distributions to local units in order to keep
them as nearly as possible in accord with actual
population and, hence, with relative local needs,
should or could be forestalled or delayed by the Fed-
eral director of the census or made dependent upon
his discretionary power to determine how soon after
actual enumeration a final promulgation of results
shall be made, which, under the act of congress, may
occur as late as 33 months thereafter.  The primary
purpose of the statute and section of the Constitu-
tion here involved is to provide for distribution of
the specified tax moneys to the local units on a per
capita basis.  To accomplish that purpose, it is pro-
vided that such distributions shall be geared to Fed-
eral enumerations; but there is no indication of an
intent that the proportionate amounts thereof to the
respective units shall be affected by the determina-
tion of Federal officialdom of the time for promul-

gation of census results. None of the compelling reasons for holding that a change in population status was intended to be effective as of the date of an official census bulletin or final promulgation, such as were found to exist in cases involving the jurisdiction of courts or the validity of proceedings or appointments to official positions, et cetera, as hereinbefore considered, are present in this case. In April and July of 1950, before 1950 census results were known, defendants made distributions, on a tentative basis, according to 1940 census figures. Subsequent distributions were made on the basis of a preliminary bulletin of the 1950 census figures issued on August 1st, with adjustments, however, to compensate for overpayments or underpayments, as indicated by those 1950 census figures, made in the April and July distributions, and all subject to further readjustments of a like nature on the basis of later census bulletins and the final promulgation, to be computed and worked out in connection with later distributions. This course, it seems to us, will occasion no disturbance of the orderly processes of government nor any hardship other than such as may flow from a miscalculation of anticipated revenues, an eventuality fully as likely to occur under plaintiff's proposed method of procedure. We hold that, for the purposes of this case, 1950 census figures must be given effect as of April 1, 1950.

Should the 1950 census figures apply to distributions made on or after April 1, 1950, of tax moneys collected before that date? The clear import of the constitutional and statutory language under consideration is that the population basis or per capita basis obtaining at the time of distribution shall apply thereto, without regard to what it may have been at the time of collection. This squares with the purpose of making moneys available to local units commensurate with contemporary needs. Plaintiff

stresses the claim that the rights of local units in sales- and intangibles-tax moneys vest.as of the date of collection by the State. Cited are cases to the effect that the statutory rights of local units to State-collected tax moneys cannot be defeated, after collection but before distribution to the units, by means of amendment of the statute. Such cases and others of like import have no application here. As construed by us, the provisions of the constitutional amendment and statute in question required, at the very time the tax moneys in controversy were collected, that they should be distributed on or after April 1, 1950, on the basis of the Federal enumeration taken as of that date. Those provisions, in effect at the time the taxes were collected by the State, fixed the respective rights of the local units at that time. Those rights vested, as of the date of collection, in so much of such moneys as they were entitled to under a distribution to be made on the basis of the 1950 census, and not 1 cent more. It follows that no claim of vested interest can stand in the way (1) of making all returns distributable on or after April 1, 1950, on the basis of the 1950 census regardless of the time of collection by the State, or (2) of making adjustments from time to time in distributions to local units which will have the effect of causing earlier distributions made on a tentative basis on or after April 1, 1950, to square with the actual figures of the 1950 census. This process of making adjustments and readjustments in succeeding distributions, as more accurate results of the 1950 census become available, does not involve a striking of balances between independent accounts of the State and local units, respectively, inhibited by *People, ex rel. Auditor General,* v. *Tuscola County Treasurer,* 73 Mich 28, and *City of Muskegon* v. *Soderberg,* 111 Mich 559, nor is the situation in the case at bar comparable to the ones involved in those

cases. Here the adjustments are made in a specific account to compensate for previous overpayments or underpayments in that same account. Neither is plaintiff correct in its contention that this process involves the retrospective application of the law. On the contrary, effect is thereby given to the meaning of the law in effect at the time the moneys were collected by the State.

Plaintiff contends that sales-tax moneys collected by the State in the first quarter of 1950 were distributable before April 1, 1950, and that, accordingly, returns thereof should be made on the basis of 1940 census figures. In this plaintiff errs. The first quarter of 1950 and collections made during that quarter continued to the end of March 31st. Remittance to the local units, required by the constitutional amendment to be made on a quarterly basis, could not be made until the quarter had ended, *viz.*, April 1st.

Plaintiff is a proper party plaintiff despite the fact that the State's distribution is required to be made to the county treasurers. The counties have no beneficial interest in the distribution, their treasurers serving merely as conduits between the State and the local units. Plaintiff has a direct financial interest in the determination of the question of what proportionate amount of the distribution made by the State shall be apportioned to Wayne county, as well as how the distribution of that amount shall subsequently be made by the Wayne county treasurer to the several cities, townships and villages within that county. It is a real party in interest.

Writ denied. No costs, a public question being involved.

REID, C. J., and BOYLES, NORTH, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.