13101

### FORDE v. OWENS, MAYOR, *ET AL.*

(158 S. E., 147)

170

*Mr. John J. McMahan,* for petitioner,

*Mr. Joseph L. Nettles,* for respondent,

March 28, 1931.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an action for injunctive relief, brought in the original jurisdiction of the Court by a citizen and taxpayer of the City of Columbia, against its mayor, councilmen, and clerk and treasurer.

For some years Columbia has been operating under the provisions of the statutory law applicable to those cities having a population of from 20,000 to 50,000 which have adopted the commission form of government. The salary for mayors of cities of this class is fixed at $2,500.00, and for each of the councilmen at $2,000.00; and the salary for mayors of cities of more than 50,000 and under 100,000 inhabitants is fixed at $5,000.00, and for each of the councilmen at $4,000.00. Articles 8 and 9 of Chapter 51 of the Civil Code of 1922 (Section 4675 *et seq.*).

In 1924 the Legislature passed an Act (33 Stat., p. 964), the title of which reads as follows:

"An Act to Amend the Provisions of Articles VIII and IX of Chapter LI of Volume 3 of the Code of 1922, Relating to Commission Form of Government in Cities, by Providing for the Automatic Entry Into the Next Highest Class of Any City Which, Having Heretofore Adopted Said Form of Government, or Which May Hereafter Adopt the Same, Shall Have Attained, or Shall Hereafter Attain, the Requisite Population for Eligibility Thereto."

Section 4750-a of the Act provides that any city which "shall attain, by the last preceding published United States Census heretofore or hereafter made, the population requisite for eligibility to the next highest class as defined in Articles VIII and IX of this Chapter, shall thereupon automatically

enter the said next highest class, and become organized thereunder in the manner prescribed in the next succeeding Sections." Section 4750-b provides that "* * * for all other purposes, the organization of such city in the next class shall be deemed complete upon the filing with the Secretary of State by the Mayor and Councilmen of such city, a certificate setting forth that the said city was theretofore organized under the Commission Form of Government in the class applicable to its then population, and that, by the last preceding United States Census, the population of such city makes it eligible to, such next highest class."

In the early months of 1930, the United States census of the City of Columbia was taken; in June, 1930, the mayor and councilmen were notified by the supervisor of census for the district in which the city is located, that the population of Columbia, according to the census taken, was 50,195. Thereafter, there appeared in the newspapers of the city a bulletin to the effect that the population of Columbia, as announced by the Board of Census at Washington, was 50,195. Later, upon inquiry made at the Bureau of Census at Washington, city officials were advised the population of Columbia was in excess of 50,000. Thereupon, on September 23, 1930, the mayor and councilmen filed with the Secretary of State a certificate, as provided by the Act of 1924, and from that time have drawn salaries at the rate provided for such officers of cities having more than 50,000 and less than 100,000 inhabitants.

The prayer of the petition is that the mayor be enjoined from receiving any greater sum, as his salary, than at the rate of $2,500.00 a year, and each of the councilmen from receiving any greater sum, as his salary, than at the rate of $2,000.00 a year, and that the city clerk and treasurer be enjoined from paying out salaries in excess of those named; and that the mayor and councilmen be required to make restitution to the treasury of the city of certain funds alleged to have been illegally paid them as salaries.

In addition to the issue as to what salaries are now in effect, the petitioner alleges that Article 8 of Chapter 51 of the Civil Code of 1922 (Section 4675 *et seq.*), classifying cities which might adopt the commission form of government, is unconstitutional, as it is made up almost wholly of special provisions for named cities; that the Act of 1924 (33 Stat., p. 964), which provides for the "automatic entry" into a higher class of a city that may have attained the required population for eligibility thereto, is in violation of Section 1 of Article 8 of the Constitution, requiring that "the General Assembly shall provide by general laws for the organization and classification of municipal corporations," and that "the powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class," and is also in violation of those sections of the Constitution which forbid enactment of any special law where "a general law can be made applicable;" and that the Act of 1929 (36 Stat., p. 154), is unconstitutional, being in conflict with Article 8, and Subdivisions 2 and 9 of Section 34 of Article 3 of the Constitution, having to do with the classification of municipal corporations; and that further, the City of Columbia, under the administration of respondents, has for several years made expenditures in excess of its income, and has no funds out of which the increased salaries of the mayor and councilmen can be lawfully paid.

The respondents, making return to the rule to show cause, alleged that Columbia adopted the commission form of government, as provided by an Act passed in 1910, now embodied in Article 9 of Chapter 51 of the Civil Code of 1922 (Section 4719 *et seq.*), and has since been conducting its government under the statutory law pertaining thereto; that the Act of 1910 accomplished the purpose of classifying, in proper form, the cities of the State desiring to adopt a commission form of government; that the Act of 1924 simply provided a proper method by which a city of one

class, because of increase of its population, might enter the next highest class to which it was eligible; that the mayor and councilmen, upon being apprised by publication of the United States census of 1930 that the population of Columbia was in excess of 50,000, filed with the Secretary of State a certificate as provided by the Act of 1924, and that from that time they have accepted salaries in the amounts provided by law to be paid by cities in the class of more than 50,000 and less than 100,000 inhabitants. They further allege that many of the allegations of the petition are irrelevant and immaterial, in that they are collateral to the real issues and not to be properly passed upon in this proceeding, but deny that the indebtedness of the city has been materially increased during their administration, in spite of the fact that bank failures have caused the loss of large funds, etc.

We shall consider first the question of the constitutionality of the laws providing for the commission form of government, incorporated in Code, Vol. 3, of 1922, and of certain Acts subsequent thereto.

It is conceded that the Act of 1910, under the provisions of which the City of Columbia adopted the commission form of government, and which is contained in Article 9 of Chapter 51 of the Civil Code, is constitutional. With regard to Article 8 of Chapter 51 of the Civil Code, contended to be unconstitutional, we have carefully examined this legislation, both in the original Acts and as codified and embodied in the Code, and also the objections made thereto. Without entering into an extended discussion of the matter, we do not think petitioner's contentions can be sustained. The Constitution requires that the General Assembly shall provide by general laws for the organization and classification of municipal corporations (Section 1 of Article 8), and forbids the enactment of special laws for that purpose. The Legislature years ago, by general enactment, provided for classification of municipal corporations, and later

(1910 and 1912), provided for further classification of cities desiring to adopt the commission form of government. Article 8 which includes the 1912 Act and subsequent amendments, provides for a number of classes, based upon population, a recognized proper mode of classification. It is true that the Legislature saw fit, at different times, to amend the 1912 Act, thus bringing about the incorporation, in the general law, of some special provisions; but this, being allowed by the Constitution, was not improper and did not render the law unconstitutional.

With regard to the objection urged to the Act of 1924, we think it is clear from a reading of the Act that, regardless of the number of cities that came within its provisions at the time of its enactment, it applied to all cities which had at the time adopted or might thereafter adopt the commission form of government. It did not apply to those cities which were otherwise classified, that is to say, which had not adopted or might not adopt the commission form of government.

We see no objection to the method provided by the Act for the reclassification of a city meeting its requirements. It is simple and expeditious in manner; the inhabitants of a city who have at one time adopted the commission form of government and who have not indicated, in the manner provided by law, any dissatisfaction with such government are relieved of the necessity, by the provisions of the Act, of further declaring by vote that they desire to retain the commission form of government by being continued in the next higher class; and as the method provided by the Act, referred to as an "automatic entry," applies to all cities of all classes having the commission form of government, which can qualify, as to population, for induction into the next higher class, the objections advanced by the petitioner to the constitutionality of the Act cannot be sustained.

The case of *Floyd v. Calvert,* 114 S. C., 116, 103 S. E., 82, relied upon by the petitioner, does not support his con-

tention. That case only held that an Act permitting a city of a certain class to exercise a power, or burdening a city of a certain class with a restriction, not permitted to or placed · upon the other cities of the same class, was unconstitutional. The provisions of the Act of 1924 apply alike to all cities of all classes having the commission form of government.

With respect to the Act of 1929 (36 Stat., p. 154), it is sufficient to say that this Act was merely an amendment to Article 9 of Chapter 51 of the Civil Code, and except that it provides for a primary of a broader scope, it left the government of the cities affected by it subject to all the provisions of law applicable to cities of that class operating under the commission form of government.

The next question presented is: Did the filing of the certificate by the mayor and councilmen of the City of Columbia on September 23, 1930, meet the requirements of the 1924 Act?

In 11 C. J., at page 71, we find:

"In the absence of a statute requiring any formal action by the census board or the legislature, a census goes into legal effect, as such, on its compilation and publication by the census superintendent or board."

While petitioner concedes that the Courts will take judicial notice of the results of the United States census, as shown by the returns, in ascertaining the population of a state, county, city, etc., he urges that the condition prescribed by the Act of 1924 for the filing of the certificate is the "publication" of the census; and contends that, under the federal law, the result of a census, in so far as it relates to cities, can never be legally published, and that certainly there can be no publication as contemplated by the 1924 Act until there have been compiled and bound certain volumes constituting a final official report of the Bureau of the Census to the Secretary of Commerce, publication by bulletin or in a newspaper not being sufficient.

Without considering the question whether, under the federal law, the census of cities as such can be legally published, we think that the Legislature, having in mind the provisions of the federal law and the customs of the census officials with regard to the "taking" and "publication" of the United States census, did not intend to use the word "published" in the Act of 1924 in the technical sense contended for by the petitioner; we think, rather, that it intended the word to have its usual general meaning, which is thus given by Webster: "To make public; to make known to people in general * * * to make public in a newspaper, book, circular, or the like."

Hence, whenever the mayor and councilmen of a city are authentically advised as to the number of inhabitants of such city, as shown by the United States census, such advice or information would be a sufficient compliance with the Act of 1924, in so far as the "publication" of the census as a prerequisite to the filing of the certificate is concerned.

We do not think that the Legislature, by its use of the word "published," ever intended or contemplated that a city entitled to be reclassified must await the possible expiration of three years, the official census period, for its reclassification, in spite of official pronouncements or statements made in the meantime by United States census officials, showing such city to have a population that would entitle it to reclassification.

The results of the census of Columbia were made known by census officials to officials of that city and by bulletins published in the newspapers. We are constrained to hold, therefore, that there was a "publication" of the census of the population of the city as contemplated by the Act of 1924. It follows that, the required certificate having been filed with the Secretary of State, the reclassification of the City of Coulmbia was effected according to the provisions of that Act.

The petitioner has advanced no sound reason, based upon the Act or otherwise, why the mayor and councilmen should not receive the increased salaries provided by law for such officers of a city of the class into which Columbia was thus automatically inducted. Such increase, resulting from the provisions of law in force before and at the time of the city's entry into the new class, is not forbidden by any provisions of the Constitution that have been called to the attention of this Court; and, as the Act provides that, upon the filing of the certificate with the Secretary of State, the organization of the city in the next higher class shall be deemed complete, there appears no reason in law why the scale of salaries provided for officers in cities of that class should not apply. This result would seem to be just and consistent with the legislative intent, since the duties required by law of such officers in the higher class are more onerous than those required of like officers in the lower class.

For an interesting and enlightening discussion of the question, see *Puterbaugh v. Wadham*, 162 Cal., 611, 123 P., 804, 806. That was a case in which the petitioner was a justice of the peace of San Diego, with the salary provided by law for such officer in a city of that class; later, under the operation of a statute, the city became, by reason of an increase in population, a member of a different class; the salary of a justice of the peace in a city of the latter class being greater than that of such officer in a city of the former class. The auditor refused to pay the increased salary and action was brought to compel payment. The Court, after discussing the question in detail, held that the petitioner was entitled to the increase in salary, and said:

"When petitioner was elected justice of the peace, the statute established his salary at $2,000.00 a year because of the population of San Diego; but the same statute fixed the salary of a justice of the peace in a city of the second class, and the evolution of the city into that class did not increase

his salary as such—it merely placed him in a new class in which he was entitled to a certain salary which happened to be in excess of that payable to him when he took the office."

The injunction is refused and the petition dismissed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTH-RAN and CARTER and MR. ACTING ASSOCIATE JUSTICE COS-GROVE concur.