No. 34,195

THE STATE OF KANSAS, ex rel. C. L. CLARK, County Attorney of Saline County, *Appellant,* v. THE BOARD OF EDUCATION OF THE CITY OF SALINA, *Appellee.*

(84 P. 2d 507)

Opinion filed November 29, 1938.

*C. L. Clark* and *David Ritchie,* both of Salina, for the appellant.

*A. R. Buzick,* of Salina, *James G. Martin, A. B. Huguenin, J. H. Fugate* and *M. S. Steere, Jr.,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This action was brought to question the authority of defendant to issue its bonds, to be used with PWA funds, for the purpose of purchasing a site and constructing and equipping a high-school building under the authority of chapter 314 of the Laws of 1937 (G. S. 1937 Supp. 72-1745). The facts were stipulated. Judgment was for defendant, and plaintiff has appealed.

The statute in question became effective February 26, 1937, and reads:

"The board of education of any city of the first class having a population of more than 18,000 and less than 21,000 and located in a county having no city of the second class is hereby authorized to issue bonds for the purpose of purchasing a site and constructing and equipping a high-school building: *Provided,* That the question of issuing bonds for such purpose shall be submitted to a vote of electors at a regular city election or at a special election called for such purpose by the city commission. The issuance of bonds hereunder shall be in accordance with the requirements of the general bond law except as otherwise provided herein. None of the restrictions or limitations provided by law regarding the amount of bonded indebtedness outstanding shall apply to the bonds issued under the provisions of this act. The amount of bonds issued under this act shall not exceed $375,000."

Under the stipulation defendant comes within the purview of this statute in all respects unless it is with respect to the population of the city. The enumeration of the inhabitants of the city of Salina, taken as of March 1 each year, was 19,136 for 1936, 20,396 for 1937 and 21,587 for 1938. The election at which the bonds in question were voted upon favorably was held August 30, 1938. The question is, Can defendant, under the authorization of this election and acting under the authority of the statute above quoted, issue the bonds in question?

Briefly, plaintiff argues that since the statute is not applicable to a board of education of a city which has a population in excess of 21,000, and since the city of Salina had a population in excess of that number at the time the bonds here involved were voted upon, a favorable vote at that election did not authorize defendant to issue the bonds. We feel compelled to concur in this view. Certainly the statute does not apply to the board of education of a city of the class mentioned, which has a population of less than 18,000 nor more than 21,000. Whatever might cause the population of the city to increase or decrease, the statute applies only when the population of the city is within the figures mentioned. We need not stop to inquire why

the legislature made this classification. No one contends the statute is invalid because of this restricted classification. Indeed, defendant depends upon this statute for authority to conduct the election and issue the bonds. Under the wording of the statute it seems that the time when the bonds are issued is the controlling time with respect to the population of the city. Also, under the statute, the bonds cannot be issued until there is a favorable vote upon the proposition to issue them.

In support of its authority to issue the bonds in question it is argued on behalf of appellee that the enumeration of inhabitants taken by the deputy assessors as of March 1 each year does not become effective until published by the state board of agriculture; that a census, to be effective, must be published, and that the only statute we have for the publication of enumerations taken by assessors as of March 1 is the publication or report made by the state board of agriculture, under G. S. 1935, 11-107. Let us examine appellee's argument on this point. G. S. 1935, 11-101 *et seq.*, provides for the enumeration of the inhabitants of a county and of the governmental subdivisions therein each year, as of March 1 (*State, ex rel., v. Duncan,* 134 Kan. 85, 96, 4 P. 2d 443). This enumeration is made by deputy assessors, upon blanks furnished them by the county assessor, which blanks had been prepared and furnished to the county assessor by the state board of agriculture. The deputy assessors are required to make and deliver their reports of such enumeration to the county assessor by June 1 of each year. The county assessor abstracts this data, sends the abstract to the state board of agriculture on or before July 15, retaining a copy in his office. The state board of agriculture is required to classify this information "and publish the same in the biennial reports of the board" (G. S. 1935, 11-107) made to the state legislature (G. S. 1935, 74-504), but it is authorized "to gather, prepare, and publish, in the form of reports, pamphlets or press notices, such other information as shall be deemed of value in promoting the agricultural industry of the state, or calculated to encourage immigration."

It will be noted that the only time the state board of agriculture is required to publish the statistical information it collects relating to population—in fact, the only time it is authorized to publish such information, unless it is deemed of value in promoting the industry of agriculture or encouraging immigration—is in its biennial report made to the legislature for its general information. No statute

makes its report of population the official census from the date of its publication, or gives to it any other legal status than that of an informative report. Counsel for appellee advise us that the state board of agriculture has a practice of publishing quarterly bulletins, and in its bulletin for "the quarter ending September 30, 1938," it published a list of the counties and cities of the state, with the population of each as shown by the enumeration taken by deputy assessors as of March 1 of that year. Counsel argue that, legally speaking, the population of the city of Salina did not change from the enumeration taken in 1937, which showed less than 21,000, until the state board of agriculture published its bulletin on September 30, 1938, or at some indefinite date thereafter, setting out the population of counties and cities enumerated as of March 1 of that year, and that since the bond election was held August 30, 1938, before this bulletin was published, the city, in legal contemplation, had a population of less than 21,000 at the time the election was held. We do not concur in this view. Counsel cite cases from other states and argue they support this view. Typical of them is *Broyles v. Mahaska County*, 213 Ia. 345, 239 N. W. 1. There the question was the official census of Oskaloosa for 1925. The court turned to the statutes of the state and found they provided for taking the enumeration and for the filing of a certificate thereof with the secretary of state, and specifically making such certificate the official record from the date it was filed. We have no such specific statute in this state, and certainly none making the publication by the state board of agriculture—indefinite as to time of publication and general in its purposes—the date from which legal changes of population are to be computed. Our statute does fix a reasonably definite date "on or before July 15" (G. S. 1935, 11-102), when the county assessor shall make an abstract in duplicate of the enumeration, certified as to its accuracy, and forward one to the state board of agriculture and retain the other "in the archives" of his office. In most of our counties, including Saline, the county clerk is its *ex officio* county assessor (G. S. 1935, 19-401); hence, one of the duplicate copies is filed in the office of the county clerk. In considering the effect of the filing of this verified abstract, it was said, in *State, ex rel., v. Montgomery County Comm'rs*, 125 Kan. 379, 381, 264 Pac. 84:

"The verified and certified enumeration so made is official and is to be used in the application of the statutes requiring the redistricting of counties, the fixing of salaries of county officers and other provisions where the operation of a statute is governed by the population of counties or other municipalities."

In the syllabus this is spoken of as "the last official census." So we have in our statutes duties of officials to be done, their work officially abstracted, and the certified abstract to be filed as a part of the records of a public office, that of the county clerk, on a date reasonably definite, "on or before July 15 of each year," which our courts have held becomes, and is, the official census when "the operation of a statute is governed by the population of counties or other municipalities." Appellee argues that the favorable vote at the election August 30, 1938, was not an issuance of the bonds, that the board of education is the entity which issues the bonds. While this is true, the favorable vote at the election was a prerequisite to the authority of the board of education to issue the bonds. It could not do so without such a vote.

Appellee points to the steps taken by it—some of them in 1937, others in 1938, and before July 15—as giving authority to issue the bonds. These were preliminary steps, some of them necessary to a bond issue, but none of them alone, or all of them together, authorized the issuance of bonds. One thing essential to authorize the bond issue was a favorable vote at an election on the proposition. This election was not held prior to the time the official census showed the population of the city to be in excess of 21,000. It seems clear the statute (G. S. 1937 Supp. 72-1745) was no longer applicable to appellee.

From what has been said it necessarily follows that the judgment of the trial court must be reversed, with directions to render judgment for plaintiff. It is so ordered.