In the Matter of the CITY OF ROCHESTER, Appellant, v COUNTY OF MONROE et al., Respondents.

Fourth Department, May 25, 1983

### APPEARANCES OF COUNSEL

*Louis N. Kash, Corporation Counsel (Michael Looby* of counsel), for appellant.

*John D. Doyle, County Attorney (Christine Burke* of counsel), for County of Monroe and another, respondents.

*Anthony M. Sortino* for Town of Irondequoit, respondent.

*William E. Easton* for Greece School District and another, respondents.

*Robert Burkwit (Philip Glickman* of counsel), for Village of Brockport and others, respondents.

*William T. Lehman (Jeffrey Wilkins* of counsel), for Brighton School District and others, respondents.

*Thomas J. Young* for Holley School District, respondent.

*E. James Springer* for Town of Brighton, respondent.

*James A. Reed* for Town of Pittsford, respondent.

*William L. Von Dohlen* for Town of Greece, respondent.

*Thomas J. Fitzpatrick* for Town of Henrietta, respondent.

*Frederick J. Holbrook* (*Richard Olsen* of counsel), for Town of Clarkson, respondent.

*Joseph A. Plantania* for Town of Penfield, respondent.

*Curtis W. Barker* for Town of Mendon, respondent.

*John W. Glavin* for Town of Wheatland, respondent.

*Gerard D. DiMarco* for Town of Hamlin, respondent.

*William C. Kelly* for Town of Chili, respondent.

*Thomas J. Cusker* for Town of Rush, respondent.

*Vincent Assini* for Town of Gates, respondent.

*Daniel G. Schum* for Town of Ogden, respondent.

*Robert L. Teamerson* (*William Polito* of counsel), for Town of Webster, respondent.

*Richard E. Stowe* for Town of Riga, respondent.

*Larry R. Coss* (*Dale Rath* of counsel), for Town of Sweden, respondent.

*John W. Fulreader* for Town of Perinton, respondent.

OPINION OF THE COURT

GREEN, J.

In this CPLR article 78 proceeding[1] we resolve a question of first impression. We hold that the County of Monroe (County) properly allocated sales tax revenues to the City of Rochester (City) in April, 1981 in accordance with the 1980 Federal decennial census. At issue is the interpretation of subdivision (b) of section 1262 of the Tax Law which provides in relevant part: "(b) In the County of Monroe amounts not set aside for county purposes shall be allocated quarterly to the city of Rochester and the area in the county outside the city of Rochester in proportion to their respective populations, *determined in accordance with the*

---

1. The City initially sued only the County. The County moved to dismiss on the ground that, *inter alia,* the court lacked jurisdiction over the towns, villages and school districts within Monroe County which, with minor exceptions, would stand to lose sales tax revenues if, as the City urged, the 1970 rather than 1980 census was used. Special Term then ordered that the 53 towns, villages and school districts who shared in the April, 1981 sales tax allocation be joined as necessary party respondents. The decision is reported at 114 Misc 2d 191.

*latest federal census* or special population census taken pursuant to section twenty of the general municipal law, *completed and published prior to the end of the quarter for which the allocation is made,* which special census must include the entire area of the county, provided, however, that a special population census shall not be taken more often than once in every two years" (emphasis supplied).

On April 17, 1981, using 1980 census figures, the County issued a check to the City for $7,974,058.11 as its quarterly share of retail sales tax revenues. The City accepted the check under protest on the ground that the allocation should have been based on the 1970 Federal census which would have resulted in an additional allocation of $1,625,217.21.[2] In this proceeding the City alleged that the 1980 Federal census was not finalized until March, 1981 and therefore, was not "completed and published prior to the end of the quarter for which the allocation is made" which was December 1, 1980 to February 28, 1981 (Tax Law, § 1262, subd [b]).

The County maintains that the 1980 Federal census was completed and published in February, 1981 and that the relevant allocation quarter is February 1, 1981 to April 30, 1981. The County concludes that whether the census was completed in February or March, 1981 is not vital because, given either date, the census would have been completed and published prior to April 30, 1981. Special Term agreed with the County's conclusion that the 1980 Federal census was completed in February, 1981. Therefore, Special Term did not believe it was necessary to decide which quarter was the allocation period referred to in the statute, as the 1980 Federal census was completed and published prior to the end of either quarter. We agree.

Sales taxes are collected throughout Monroe County, then forwarded to the State and eventually returned to the County on a proportionate basis. The County retains a percentage of this revenue and distributes the remainder to the City of Rochester and to the various towns, villages

2. Since the 1980 census recorded a net loss of population of over 54,000 in the City of Rochester, the City's share of the retail sales tax revenues from the County dropped from 41.4% to 34.2% of the total fund.

and school districts within the County. The County traditionally has made such allocations in January, April, July and October of each year. It is the allocation of April, 1981 which is at issue here. The County correctly notes that this allocation was calculated in accordance with the same quarterly allocation system in use by the County since 1965, under which the City has consistently accepted payment. Specifically, the April, 1971 sales tax allocation was made without objection, on the basis of 1970 Federal census figures.

The pivotal question in this case is when was the 1980 Federal decennial census "completed and published" within the meaning of the Tax Law. There is no specific provision with reference to the time when a census becomes final, only that basic tabulations of population shall be "completed, reported, and transmitted to each respective State within one year after the decennial census date", i.e., by April 1, 1981 (US Code, tit 13, § 141, subd [c]). Nor is there any statutory requirement that the final tabulations be in any particular form or book. Once the census figures are broken down into counties, towns, wards, etc., and are released to the public by an authorized official, the census is complete for all practical purposes (*Cahill v Leopold,* 141 Conn 1, 11-13). Thus, we conclude that the 1980 census was completed and published when the preliminary report (PHC 80-P-34) entitled "1980 Census Population and Housing, New York" was issued by the Census Bureau in February, 1981.

This interpretation accords with common sense. A census is the enumeration of the population not the formal announcement of the result (see, e.g., *Underwood v Hickman,* 162 Tenn 689). The object of subdivision (b) of section 1262 of the Tax Law is to ensure that sales tax dollars are redistributed according to need based upon accurate census data. If a city's population has decreased during the decennial period, it would be unreasonable and unfair to permit that city to continue to receive funds based upon inaccurate and outdated census figures simply because Federal officials have not made a formal announcement of the most recent data. We note that as early as September, 1980 the Census Bureau had closed its offices in Monroe County and

had completed its tabulation of the population of each city, town, and village within the County. Moreover, the difference in population count reported by the Census Bureau between February and March was inconsequential.[3]

A review of the legislative history of section 1262 of the Tax Law indicates that neither the Governor nor members of the Legislature made any comments on the intent or purpose of the statute.[4] It is useful therefore, to look to decisions from other States which have interpreted similar legislation. We find that the opinion of the Supreme Court of Michigan in *City of Detroit v State Comr. of Revenue* (330 Mich 239) is directly on point. There the City of Detroit sought mandamus to compel the State Commissioner of Revenue to allocate sales tax moneys for 1950 on the basis of the 1940 decennial census. The relevant statute required that sales tax revenues received by the State be returned to the counties on a per capita basis according to "the last State-wide Federal census". Detroit argued that the 1950 census was not complete until the final figures and results were promulgated by the Director of the Census (which had not been done as of April 3, 1951 when the court issued its decision). Although the applicable statute was unsupported by legislative history or memoranda, the court reasoned: "There is no indication of an intent to fix some arbitrary basis, utterly unrelated to need or use, for the distribution of these tax moneys. The distributions and returns were intended to serve the purpose of helping to finance the operations of local governmental units in proportion to their respective needs, it being thought, apparently, that the expense of such operations would bear some direct relationship to the actual population in each of the

3. The Census Bureau's preliminary report of February, 1981 entitled "1980 Census Population and Housing, New York" upon which the County relies, listed the population of Rochester as 241,539. The advance report of final counts issued March 20, 1981 entitled "P.L. 94-171 Counts" upon which the City relies, listed the population of Rochester as 241,741. The difference of 202 is less that 1/10 of 1%.

4. Section 1262 of the Tax Law was originally enacted in an extraordinary session of the State Legislature in 1934 to enable large cities to impose taxes to relieve the inhabitants from hardships and suffering caused by unemployment (L 1934, ch 873). The act was later amended to remove time limitations on the imposition of such taxes (L 1955, ch 215). The words "completed and published prior to the end of the quarter for which the allocation is made" did not appear until 1965 (L 1965, ch 93).

units at the time such expenses were being incurred. It is inconceivable, therefore, that it could have been intended, as would follow from plaintiff's contention, that the relative changes which necessarily must be made, at the time of a new census, in the proportionate returns and distributions to local units in order to keep them as nearly as possible in accord with actual population and, hence, with relative local needs, should or could be forestalled or delayed by the Federal director of the census or made dependent upon his discretionary power to determine how soon after actual enumeration a final promulgation of results shall be made, which, under the act of congress, may occur as late as 33 months thereafter" (*City of Detroit v State Comr. of Revenue*, 330 Mich 239, 250, *supra*).

We think that the same reasoning controls the instant case. The Tax Law discloses a clear intent that distributions should be made on a basis as nearly in accord with the actual population as possible. Therefore we find that the population figures contained in the preliminary report entitled "1980 Census of Population and Housing, New York" were completed and published when the report was issued in February, 1981. This document is identified as PHC 80-P-34 and states that it is "For Sale by the Bureau of the Census and U.S. Department of Commerce District Offices, 70 cents." This data was sufficient for the County to determine its allocation of sales tax revenues to the City in April, 1981. This conclusion finds support in the case law of foreign jurisdictions (*City of Nashville v Kizer*, 194 Tenn 357; see, also, *Haralson v State ex rel. King*, 260 Ala 473; *Excise Bd., Washita County v Lowden*, 189 Okla 286; *Ervin v State*, 119 Tex Cr Rep 204).

We note that the only New York decision remotely relevant to the precise issue before us supports our determination. *Matter of Schneider v Rockefeller* (31 NY2d 420) involved a constitutional challenge to the redistricting of the State Legislature in 1972 (see L 1972, ch 11). The State Constitution provided that for purposes of legislative apportionment, the most recent Federal census should control "in so far as such census and the tabulation thereof

purport to give the information necessary therefor" (NY Const, art III, § 4). Although Special Term was free to direct discovery of the census data pending its decision on motions for dismissal and summary judgment, the Court of Appeals unanimously held that its failure to do so was not an abuse of discretion because the use of "corrected 1970 Federal census data — so-called 'third count' tabulations" was the "best available" to the joint legislative committee in the fall of 1971 (*Matter of Schneider v Rockefeller, supra,* pp 435, 436).

The City relies upon an opinion of the State Comptroller which concludes "that the phrase 'latest federal census .... completed and published' was intended to refer to the latest *certified* federal census figures" (Opns St Comp, 1981, p 36). The City contends that the Comptroller is empowered to interpret the tax laws and therefore his opinion, unless irrational, should control. We decline to follow the Comptroller's opinion. Since the phrase "completed and published" is not explicitly defined in the Tax Law, reliance must be placed upon the interpretation of the agency charged with administering the statute which in this case is the County, not the Comptroller (*Matter of Bernstein v Toia,* 43 NY2d 437; cf. *Kurscics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). If we were to adopt the Comptroller's opinion we would be writing an additional requirement of certification into the Tax Law. This we decline to do.

In view of our determination that the 1980 Federal census was completed and published in February, 1981, it is unnecessary for us to determine which calendar period was the "quarter for which the allocation is made" (Tax Law, § 1262, subd [b]). Even if the period of December 1, 1980 to February 28, 1981 is the appropriate quarter as the City concludes, the February, 1981 preliminary report would still have been "completed and published prior to the end of the quarter for which the allocation is made" within the meaning of the statute (Tax Law, § 1262, subd [b]).

Accordingly, the judgment should be affirmed.

DILLON, P. J., HANCOCK, JR., CALLAHAN and DENMAN, JJ., concur.

Judgment unanimously affirmed, without costs.